1
2
3
4

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

5
6
7

LAW OFFICES OF DAVID A KAUFMAN, APC
David A. Kaufman, Esq. (Bar No. 284488)
7752 Fay Ave Suite G
La Jolla, CA 92037
Tel:   (619) 865-8648

8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

D.S., individually and as successor in
interest to Yan Li, deceased,

12

        Plaintiff,

13

14        vs.

15
16
17
18

COUNTY OF SAN DIEGO; DANIEL
NICKEL; JASON BUNCH, JAVIER
MEDINA; DAVID WILLIAMS; CITY
OF SAN DIEGO; ROGELIO MEDINA
and DOES 1-10, inclusive,

19

        Defendants.

20
21
22
23
24
25
26
27
28

Case No. ____'23CV0459 AJB  BLM____

**COMPLAINT FOR DAMAGES**

1. Unreasonable Search and
   Seizure—Unlawful Detention and
   Arrest (42 U.S.C. § 1983)
2. Unreasonable Search and
   Seizure—Excessive Force (42
   U.S.C. § 1983)
3. Unreasonable Search and
   Seizure—Denial of Medical Care
   (42 U.S.C. § 1983)
4. Due Process—Interference with
   Familial Relationship (42 U.S.C. §
   1983)
5. Municipal Liability – Inadequate
   Training (42 U.S.C. § 1983)
6. Municipal Liability –
   Unconstitutional Custom, Practice,
   or Policy (42 U.S.C. § 1983)
7. Municipal Liability – Ratification
   (42 U.S.C. § 1983)
8. False Arrest/ False Imprisonment
9. Battery (wrongful death and
   survival)
10. Negligence (wrongful death and
    survival)
11. Violation of Cal. Civil Code § 52.1

**DEMAND FOR JURY TRIAL**

1

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff D.S. ("Plaintiff"), individually and as successor in interest to Yan Li, deceased, for his Complaint against Defendants COUNTY OF SAN DIEGO, DANIEL NICKEL, JASON BUNCH, JAVIER MEDINA, DAVID WILLIAMS, CITY OF SAN DIEGO, ROGELIO MEDINA and DOES 1-10, inclusive, and alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

**INTRODUCTION**

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal deputy-involved shooting of Plaintiff's mother, Yan Li ("DECEDENT"), on March 3, 2022.

1

## **PARTIES**

2      4.     At all relevant times, DECEDENT was an individual residing in San

3    Diego, California.

4      5.     Plaintiff D.S. is an individual residing in San Diego, California and is

5    the natural son of DECEDENT.  D.S. sues in his individual capacity as the son of

6    DECEDENT and also as the successor in interest to DECEDENT.  D.S. seeks both

7    survival and wrongful death damages under federal and state law.

8      6.     At all relevant times, Defendant COUNTY OF SAN DIEGO

9    ("COUNTY") is and was a municipal corporation existing under the laws of the

10   State of California.  COUNTY is a chartered subdivision of the State of California

11   with the capacity to be sued.  COUNTY is responsible for the actions, omissions,

12   policies, procedures, practices, and customs of its various agents and agencies,

13   including the San Diego County Sheriff's Department and its agents and employees.

14   At all relevant times, Defendant COUNTY was responsible for assuring that the

15   actions, omissions, policies, procedures, practices, and customs of the San Diego

16   County Sheriff's Department and its employees and agents complied with the laws

17   of the United States and of the State of California.  At all relevant times, COUNTY

18   was the employer of Defendants DOES 1-5, NICKEL, BUNCH, J. MEDINA, and

19   WILLIAMS.

20     7.     At all relevant times, Defendant CITY OF SAN DIEGO ("CITY") is

21   and was a municipal corporation existing under the laws of the State of California.

22   CITY is a chartered subdivision of the State of California with the capacity to be

23   sued.  CITY is responsible for the actions, omissions, policies, procedures, practices,

24   and customs of its various agents and agencies, including the City of San Diego

25   Police Department and its agents and employees.  At all relevant times, Defendant

26   CITY was responsible for assuring that the actions, omissions, policies, procedures,

27   practices, and customs of the City of San Diego Police Department and its

28

employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, CITY was the employer of Defendants DOES 6-10 and R. MEDINA.

8.      Defendant DANIEL NICKEL ("NICKEL") is, and was at the time of this incident, a deputy sheriff working for the San Diego County Sheriff's Department.  At all relevant times, NICKEL was acting under color of law within the course and scope of his duties as a sheriff's deputy for the San Diego County Sheriff's Department.  At all relevant times, NICKEL was acting with the complete authority and ratification of his principal, Defendant COUNTY.

9.      Defendant JASON BUNCH ("BUNCH") is, and was at the time of this incident, a deputy sheriff working for the San Diego County Sheriff's Department. At all relevant times, BUNCH was acting under color of law within the course and scope of his duties as a sheriff's deputy for the San Diego County Sheriff's Department. BUNCH was acting with the complete authority and ratification of his principal, Defendant COUNTY.

10.     Defendant JAVIER MEDINA ("J. MEDINA") is, and was at the time of this incident, a deputy sheriff working for the San Diego County Sheriff's Department.  At all relevant times, MEDINA was acting under color of law within the course and scope of his duties as a sheriff's deputy for the San Diego County Sheriff's Department.  At all relevant times, J. MEDINA was acting with the complete authority and ratification of his principal, Defendant COUNTY.

11.     Defendant DAVID WILLIAMS ("WILLIAMS") is, and was at the time of this incident, a deputy sheriff working for the San Diego County Sheriff's Department.  At all relevant times, WILLIAMS was acting under color of law within the course and scope of his duties as a sheriff's deputy for the San Diego County Sheriff's Department.  At all relevant times, WILLIAMS was acting with the complete authority and ratification of his principal, Defendant COUNTY.

12.     Defendant ROGELIO MEDINA ("R. MEDINA") is, and was at the time of this incident, a police officer working for the City of San Diego Police Department.  At all relevant times, R. MEDINA was acting under color of law within the course and scope of his duties as a sheriff's deputy for the City of San Diego Police Department.  At all relevant times, R. MEDINA was acting with the complete authority and ratification of his principal, Defendant CITY.

13.     Defendants DOES 1-3 ("DOE DEPUTIES") are, and were at the time of this incident, deputy sheriffs working for the San Diego County Sheriff's Department.  At all relevant times, DOE DEPUTIES were acting under color of law within the course and scope of their duties as sheriff's deputies for the San Diego County Sheriff's Department.  At all relevant times, DOE DEPUTIES were acting with the complete authority and ratification of their principal, Defendant COUNTY.

14.     Defendants DOES 4-5 are, and were at the time of this incident, managerial, supervisorial, and policymaking employees of the San Diego County Sheriff's Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the San Diego County Sheriff's Department.  At all relevant times, DOES 6-10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

15.     Defendants DOES 6-8 ("DOE OFFICERS") are, and were at the time of this incident, police officers working for the City of San Diego Police Department.  At all relevant times, DOE OFFICERS were acting under color of law within the course and scope of their duties as sheriff's deputies for the City of San Diego Police Department.  At all relevant times, DOE OFFICERS were acting with the complete authority and ratification of their principal, Defendant CITY.

16.     Defendants DOES 9-10 are, and were at the time of this incident, managerial, supervisorial, and policymaking employees of the City of San Diego

Police Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the City of San Diego Police Department.  At all relevant times, DOES 9-10 were acting with the complete authority and ratification of their principal, Defendant CITY.

17.     On information and belief, DOES 1-10 were residents of the County of San Diego.

18.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, and WILLIAMS were acting on the implied and actual permission and consent of Defendants DOES 4-5 and the COUNTY.

19.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 4-5 were acting on the implied and actual permission and consent of the COUNTY.

20.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE OFFICERS and R. MEDINA were acting on the implied and actual permission and consent of Defendants DOES 9-10 and the CITY.

21.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 9-10 were acting on the implied and actual permission and consent of the CITY.

22.     The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 4-10, inclusive, are unknown to Plaintiff, who otherwise sue these Defendants by such fictitious names.  Plaintiff will seek leave to amend his complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously named Defendants are responsible in some manner for the conduct or liabilities alleged herein.

23. At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

24. All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

25. DOES 1-10 are sued in their individual capacity.

26. On or around August 19, 2022, Plaintiff filed a comprehensive and timely claim for damages with the County of San Diego and the City of San Diego pursuant to applicable sections of the California Government Code.

27. On September 26, 2022, the COUNTY rejected Plaintiff's claim. Plaintiff's claim against the CITY was rejected by operation of law.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

28. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 27 of his Complaint with the same force and effect as if fully set forth herein.

29. This incident was captured on video. On March 3, 2022, at Acqua Vista Condominiums on West Beech Street in San Diego, California, at approximately 12:40 p.m. on that date, BUNCH attempted to serve an eviction notice on 47-year-old San Diego resident Dr. Yan Li ("DECEDENT"). DECEDENT was mentally ill at all relevant times, and was clearly in a state of mental crisis during this incident. When DECEDENT answered the door, she was exhibiting signs of being mentally ill. DECEDENT had a kitchen knife in her hand

when she opened the door, and on information and belief, DECEDENT had a knife in her hand because she was cooking in her kitchen when BUNCH knocked on her door.  DECEDENT did not threaten anyone with the knife and did not exit her apartment at that time.  BUNCH shouted at DECEDENT and unnecessarily used profanity with her.  DECEDENT doubted whether BUNCH was a law enforcement officer, thinking that BUNCH might be an intruder, which would indicate that she was experiencing a mental crisis.  As a trained police officer, BUNCH and the other officers should have recognized that DECEDENT was experiencing a mental health issue, and should have responded accordingly.  DECEDENT closed the door to her apartment and remained inside the apartment.  At that time, DECEDENT posed no threat to any person, and the officers had no information that DECEDENT had injured anyone or committed any crime at that time.  Properly trained police officers are taught recognize signs of mental illness and taught to de-escalate situations involving a mentally ill individual or a person who is experiencing a mental crisis.  BUNCH and the other officers violated their training and basic police training when they escalated the situation involving DECEDENT, particularly because DECEDENT was obviously experiencing a mental crisis.

30.     Approximately 40 minutes later, additional officers responded to DECEDENT's condominium unit, including NICKEL, J. MEDINA, WILLIAMS, R. MEDINA (a K-9 officer with the CITY), DOE DEPUTIES and DOE OFFICERS.  When the officers responded, DECEDENT was inside her unit, behind a bedroom door, and was not posing a threat to any person.  At approximately 1:30 p.m., officers, including NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, BUNCH, DOE DEPUTIES and/or DOE OFFICERS, opened the door to DECEDENT's unit and entered the unit.

31.     While the officers and DECEDENT were inside her unit, WILLIAMS deployed a beanbag shotgun against DECEDENT.  On information and belief, the

defendant officers and/or DOE OFFICERS also deployed flash bang rounds against DECEDENT.  At the time of the beanbag deployment and flash bang deployment, DECEDENT was inside her apartment and was not posing a threat to any person. DECEDENT was some distance away from WILLIAMS and the other officers at the time of the beanbag and flash bang deployment.  WILLIAMS failed to give DECEDENT a verbal warning that he was prepared to deploy beanbag rounds against her, and the officers also failed to give DECEDENT a verbal warning prior to deploying the flash bang rounds.  The use of the beanbag shotgun and flash bang against DECEDENT was an excessive and unreasonable use of force and escalated the situation involving DECEDENT.  The inappropriate beanbag and flash bang deployment escalated the situation and caused DECEDENT to move toward the front door to her unit and to exit her unit, into the hallway.  R. MEDINA had a police K-9 on scene, and the barking police dog also escalated the situation.  Rather than deploying force against DECEDENT, the officers should have summoned mental health assistance for DECEDENT and ensured that there were appropriate personnel on scene to bridge any obvious language barriers.

32.    Immediately after DECEDENT exited her unit into the hallway, NICKEL, J. MEDINA, R. MEDINA, and WILLIAMS fired lethal shots at DECEDENT, killing her.  None of the officers gave DECEDENT a verbal warning that deadly force would be used, even though basic police training teaches sheriff's deputies and police officers to give a verbal warning that deadly force will be used prior to using deadly force.  The shooting took place in the hallway just outside DECEDENT's unit.  The shooting was an excessive and unreasonable use of force, including because DECEDENT was not armed with a gun and posed no immediate threat of death or serious bodily injury to any person immediately prior to or at the time of the shots.  The shooting and other uses of force against DECEDENT were inappropriate and violated the officers' and deputies' training and basic police

1   training.  Officers are required to justify every shot they fire, and here, none of the

2   shots were justified.

3       33.    Prior to the shooting, the deputies and officers engaged in pre-shooting

4   negligent tactics, including escalating a situation involving a mentally ill individual,

5   failing to create an appropriate tactical plan, failing to communicate amongst

6   themselves, failing to give a verbal warning that deadly force would be used, and

7   entering DECEDENT's unit under false pretenses when DECEDENT posed no

8   threat to any person and when the officers did not observe DECEDENT commit any

9   crime.

10      34.    Plaintiff is DECEDENT's successor in interest as defined in Section

11  377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's

12  interest in this action as the natural child of DECEDENT.

13      35.    Plaintiff incurred funeral and burial expenses as a result of the

14  shooting.

15

16                          **<u>FIRST CLAIM FOR RELIEF</u>**

17      **Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)**

18      (Against Defendants DOE DEPUTIES, DANIEL NICKEL, JASON BUNCH,

19   JAVIER MEDINA, DAVID WILLIAMS, DOE OFFICERS, ROGELIO MEDINA)

20      36.    Plaintiff repeats and re-alleges each and every allegation in

21  paragraphs 1 through 35 of this Complaint with the same force and effect as if fully

22  set forth herein.

23      37.    This incident was captured on video.  On March 3, 2022, at Acqua

24  Vista Condominiums on West Beech Street in San Diego, California, at

25  approximately 12:40 p.m. on that date, BUNCH attempted to serve an eviction

26  notice on DECEDENT.  DECEDENT had a history of mental illness and was

27  clearly in a state of mental crisis during this incident.  When DECEDENT answered

28  the door, she had a kitchen knife in her hand (which, on information and belief, she

was using to cook) and was exhibiting signs of being mentally ill.  DECEDENT did not threaten anyone with the knife and did not exit her apartment at that time. BUNCH shouted at DECEDENT and unnecessarily used profanity with her. DECEDENT doubted whether BUNCH was a law enforcement officer, thinking that he might be an intruder, which would indicate that she was experiencing a mental crisis.  As a trained police officer, BUNCH should have recognized that DECEDENT was experiencing a mental health issue, and he should have responded accordingly.  DECEDENT closed the door to her apartment and remained inside the apartment.  At that time, DECEDENT posed no threat to any person, and the defendant officers had no information that DECEDENT had injured anyone or committed any crime.  Properly trained police officers are taught recognize signs of mental illness and taught to de-escalate situations involving a mentally ill individual or a person who is experiencing a mental crisis.  BUNCH violated his training and basic police training when he escalated the situation involving DECEDENT, particularly because DECEDENT was obviously experiencing a mental crisis.

38.    Approximately 40 minutes later, additional officers responded to DECEDENT's condominium unit, including NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE DEPUTIES and DOE OFFICERS. When the officers responded, DECEDENT was inside her unit, behind a bedroom door, and was not posing a threat to any person.  At approximately 1:30 p.m., officers, including NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE DEPUTIES and DOE OFFICERS, opened the door to DECEDENT's unit and entered the unit.

39.    In addition to the detention and arrest being unlawful, the scope and manner of the detention and arrest was unlawful and unreasonable.

40.    While inside DECEDENT's unit, WILLIAMS deployed a beanbag shotgun against DECEDENT without warning.  At the time of the beanbag deployment, DECEDENT was inside her apartment and was not posing a threat to

any person.  The use of the beanbag shotgun against DECEDENT was an excessive and unreasonable use of force and escalated the situation involving DECEDENT. The inappropriate beanbag deployment caused DECEDENT to move toward the exit of her unit and to exit her unit.  Immediately after DECEDENT exited her unit, NICKEL, J. MEDINA, R. MEDINA, and WILLIAMS fired lethal shots at DECEDENT without warning, killing her.  After the shooting, Defendants handcuffed Plaintiff, arresting her without probable cause.

41.   Defendants did not observe DECEDENT commit any crime, and DECEDENT was not engaged in any criminal activity at the time of the seizure, the use of force, or the handcuffing.

42.   When Defendants trained their weapons on DECEDENT, she was not free to leave.  Defendants struck DECEDENT with beanbag rounds and/or flash bang rounds, as well as lethal rounds, thereby seizing her.  In addition to the detention itself being unreasonable, the scope and matter of the detention was also unreasonable.

43.   When Defendants engaged in the foregoing conduct, detaining DECEDENT without reasonable suspicion and then arresting her without probable cause, they violated her right to be secure in her person against unreasonable searches and seizures as guaranteed to her under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

44.   The conduct of Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, R. MEDINA.

45.     At all relevant times, DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, R. MEDINA were acting under color of state law.

46.     As a result of their misconduct, Defendants DOE DEPUTIES, NICKEL, J. MEDINA, BUNCH, WILLIAMS, DOE OFFICERS, and R. MEDINA are liable for DECEDENT's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

47.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of her death after the shooting, and also suffered a loss of enjoyment of life, loss of life, and loss of earning capacity. Plaintiff seeks survival damages, costs, and attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

(Against Defendants DOE DEPUTIES, DANIEL NICKEL, JAVIER MEDINA, DAVID WILLIAMS, DOE OFFICERS, ROGELIO MEDINA)

48.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 47 of his Complaint with the same force and effect as if fully set forth herein.

49.     This incident was captured on video.  On March 3, 2022, at Acqua Vista Condominiums on West Beech Street in San Diego, California, at approximately 12:40 p.m. on that date, BUNCH attempted to serve an eviction notice on DECEDENT.  DECEDENT had a history of mental illness and was clearly in a state of mental crisis during this incident.  When DECEDENT answered the door, she had a kitchen knife in her hand (which, on information and belief, she was using to cook in her kitchen) and was exhibiting signs of being mentally ill.

DECEDENT did not threaten anyone with the knife and did not exit her apartment at that time.  BUNCH shouted at DECEDENT and unnecessarily used profanity with her.  DECEDENT doubted whether BUNCH was a law enforcement officer, thinking that he might be an intruder, which would indicate that she was experiencing a mental crisis.  As a trained police officer, BUNCH should have recognized that DECEDENT was experiencing a mental health issue, and he should have responded accordingly.  DECEDENT closed the door to her apartment and remained inside the apartment.  At that time, DECEDENT posed no threat to any person, and the defendant officers had no information that DECEDENT had injured anyone or committed any crime.  Properly trained police officers are taught recognize signs of mental illness and taught to de-escalate situations involving a mentally ill individual or a person who is experiencing a mental crisis.  BUNCH violated his training and basic police training when he escalated the situation involving DECEDENT, particularly because DECEDENT was obviously experiencing a mental crisis.

50.     Approximately 40 minutes later, additional officers responded to DECEDENT's condominium unit, including NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE DEPUTIES and DOE OFFICERS. When the officers responded, DECEDENT was inside her unit, behind a bedroom door, and was not posing a threat to any person.  At approximately 1:30 p.m., officers, including NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE DEPUTIES and DOE OFFICERS, opened the door to DECEDENT's unit and entered the unit.

51.     While inside DECEDENT's unit, WILLIAMS deployed a beanbag shotgun against DECEDENT without first giving her a verbal warning that deadly force would be used.  At the time of the beanbag and flash bang deployment, DECEDENT was inside her apartment and was not posing a threat to any person. The use of the beanbag shotgun against DECEDENT was an excessive and

unreasonable use of force and escalated the situation involving DECEDENT. The inappropriate beanbag deployment caused DECEDENT to move toward the exit of her unit and to exit her unit.  The officers escalated the incident by crowding into the small hallway of DECEDENT's condo unit.  There was no urgency in getting DECEDENT out of her condo unit and no reason for the officers to enter her unit.

52.     Immediately after DECEDENT exited her unit, into the hallway, NICKEL, J. MEDINA, R. MEDINA, and WILLIAMS fired lethal shots at DECEDENT, killing her.  The officers and deputies did not give DECEDENT a verbal warning that deadly force would be used.  The shooting took place in the hallway just outside DECEDENT's unit.  The shooting was an excessive and unreasonable use of force, including because DECEDENT was not armed with a gun and posed no immediate threat of death or serious bodily injury to any person at the time of the shots.  The shooting and other uses of force against DECEDENT were inappropriate and violated the officers' and deputies' training and basic police training.  Officers are required to justify every shot they fire, and here, all of the shots were unjustified.  The officers had other reasonable options available other than shooting.

53.     Defendants' unjustified shooting and other uses of force against DECEDENT deprived DECEDENT of her right to be secure in her person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

54.     As a result of their misconduct, Defendants DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA are liable for DECEDENT's injuries, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations.

55.     The conduct of Defendants DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA was willful, wanton, malicious,

and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA.

56.   As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of her death after the shooting, loss of enjoyment of life, loss of life, and loss of earning capacity.  Plaintiff brings this claim as successor in interest to DECEDENT, and seeks survival damages for the violation of DECEDENT's rights. Plaintiff further seeks attorney's fees and costs under this claim.

### THIRD CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(Against Defendants DOE DEPUTIES, DANIEL NICKEL, JAVIER MEDINA, DAVID WILLIAMS, DOE OFFICERS, ROGELIO MEDINA)

57.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 56 of his Complaint with the same force and effect as if fully set forth herein.

58.   After being shot by the beanbag rounds and/or flash bang rounds, as well as by lethal rounds, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely summon medical care or permit medical personnel to treat DECEDENT. The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering and was a contributing cause of DECEDENT's death.

59.   The denial of medical care by the defendant officers and deputies deprived DECEDENT of her right to be secure in her person against unreasonable

searches and seizures as guaranteed to her under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

60.     Defendants DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

61.     The conduct of DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA.

62.     As a result of their misconduct, Defendants DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA are liable for DECEDENT's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

63.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of her death, loss of enjoyment of life, loss of life, and loss of earning capacity.  Plaintiff brings this claim as successor in interest to DECEDENT, and seeks survival damages for the violation of DECEDENT's rights.  Plaintiff further seeks attorney's fees and costs under this claim.

//

//

**FOURTH CLAIM FOR RELIEF**

**Due Process—Interference with Familial Relationship (42 U.S.C. § 1983)**

(Against Defendants DOE DEPUTIES, DANIEL NICKEL, JASON BUNCH, JAVIER MEDINA, DAVID WILLIAMS, DOE OFFICERS, ROGELIO MEDINA)

64.     Plaintiff repeats and re-allege each and every allegation in paragraphs 1 through 63 of his Complaint with the same force and effect as if fully set forth herein.

65.     Plaintiff had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his mother, DECEDENT.

66.     The aforementioned actions of DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA, including escalating a situation involving a person who was having a mental crisis, entering DECEDENT's unit under false pretenses, unlawfully detaining and arresting DECEDENT, shooting her with a beanbag gun, flash bang rounds, and with a lethal firearm, and denying her medical care, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiff, and with purpose to harm unrelated to any legitimate law enforcement objective.

67.     DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA thus violated the substantive due process rights of Plaintiff to be free from unwarranted interference with his familial relationship with DECEDENT, his mother.

68.     As a direct and proximate cause of the acts of DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA,

Plaintiff suffered emotional distress, mental anguish, and pain. Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of his natural life.

69.     The conduct of DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA.

70.     Plaintiff brings this claim individually and seeks wrongful death damages under this claim for the interference with his familial relationship with DECEDENT. Plaintiff also seeks attorney's fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(Against Defendants COUNTY, CITY, DOES 4-5, DOES 9-10)

71.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 70 of his Complaint with the same force and effect as if fully set forth herein.

72.     Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA acted under color of law.

73.     The acts of Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA deprived DECEDENT and Plaintiff of their particular rights under the United States Constitution.

74.     The training policies of Defendants COUNTY and CITY were not adequate to train its deputies and officers, respectively, to handle the usual and recurring situations with which they must deal.

75.     Defendants COUNTY and CITY were deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

76.     The failure of Defendant COUNTY to provide adequate training caused the deprivation of DECEDENT's rights by Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, and WILLIAMS, and the failure of Defendant CITY to provide adequate training caused the deprivation of DECEDENT's rights by Defendants DOE OFFICERS, and R. MEDINA; that is, the supervisory and municipal defendants' failure to train is so closely related to the deprivation of DECEDENT's rights as to be the moving force that caused the ultimate injury.

77.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

78.     Accordingly, Defendants COUNTY and DOES 4-5, as well as CITY and DOES 9-10, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

79.     Plaintiff brings this claim as successor in interest to DECEDENT and seeks both survival and wrongful death damages under this claim.  Plaintiff also seeks attorney's fees and costs under this claim.

//

## SIXTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Against Defendants COUNTY, CITY, DOES 4-5, DOES 9-10)

80.  Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 79 of his Complaint with the same force and effect as if fully set forth herein.

81.  Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA acted under color of law.

82.  Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, and WILLIAMS acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant COUNTY, and defendants DOE OFFICERS and R. MEDINA acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant CITY.

83.  On information and belief, Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the unlawful detention and arrest of DECEDENT, the uses of force against DECEDENT, the denial of medical care to DECEDENT, or DECEDENT's death.

84.  Defendants DOES 4-5, together with other COUNTY policymakers and supervisors, as well as DOES 9-10, together with other CITY policymakers and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)  Using excessive force, including excessive use of deadly force and excessive use of less lethal force;

(b)  Providing inadequate training regarding the use of deadly force;

(c)  Making unlawful detentions and arrests, including entering residences under false pretenses;

(d)    Employing and retaining as deputy sheriffs/police officers individuals such as Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA, whom Defendant COUNTY and CITY, respectively, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(e)    Inadequately supervising, training, controlling, assigning, and disciplining COUNTY deputies and other personnel, including Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, and CITY police officers, including DOE OFFICERS and R. MEDINA, whom Defendant COUNTY and CITY, respectively, knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(f)    Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by COUNTY sheriff's deputies and CITY police officers;

(g)    Failing to adequately discipline COUNTY sheriff's deputies and CITY police officers, respectively, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(h)    Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(i)    Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers/deputies involved;

(j)    Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

(k)    Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of force.

85.    By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

86.    Defendants COUNTY and DOES 4-5, as well as CITY and DOES 9-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified

such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiff, and other individuals similarly situated.

87.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, COUNTY and DOES 4-5, as well as CITY and DOES 9-10, acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's and Plaintiff's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 4-5, as well as CITY and DOES 9-10,were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiff.

88.     Accordingly, Defendants COUNTY and DOES 4-5, as well as CITY and DOES 9-10, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

89.     Plaintiff brings this claim individually and as successor in interest to DECEDENT and seeks both survival and wrongful death damages under this claim. Plaintiff also seeks attorney's fees and costs under this claim.

//

//

//

//

**SEVENTH CLAIM FOR RELIEF**

**Municipal Liability for Ratification (42 U.S.C. §1983)**

(Against Defendants COUNTY, CITY, DOES 4-5, DOES 9-10)

90.    Plaintiff repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

91.    Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA acted under color of law.

92.    The acts of Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA deprived DECEDENT and Plaintiff of their particular rights under the United States Constitution.

93.    Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

94.    Upon information and belief, final policymakers, acting under color of law, who had final policymaking authority concerning the acts of Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA ratified the individual Defendants' acts and the bases for them.  Upon information and belief, the final policymakers knew of and specifically approved of the individual Defendants' acts.

95.    Upon information and belief, final policymakers have determined (or will determine) that the acts of Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA were "within policy."

96.    On information and belief, the CITY and COUNTY ratified the conduct by DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA, respectively as to their employees, as alleged herein.

97.    By reason of the aforementioned acts and omissions, Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of

his natural life.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

98.     Accordingly, Defendants CITY, COUNTY, DOES 4-5 and DOES 9-10 are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

99.     Plaintiff brings this claim both individually and as successor-in-interest to DECEDENT.  Plaintiff seeks survival damages, including for the nature and extent of DECEDENT's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages, attorneys' fees, and costs under this claim.

100.   The conduct of Defendants DOES 4-5 and DOES 9-10 was malicious, oppressive and in reckless disregard for the rights and safety of DECEDENT and Plaintiffs and warrants the imposition of exemplary and punitive damages as to DOES 4-5 and DOES 9-10.

## EIGHTH CLAIM FOR RELIEF

**False Arrest/False Imprisonment** (survival and wrongful death)

(Against Defendants CITY, COUNTY, DOE DEPUTIES, DANIEL NICKEL, JASON BUNCH, JAVIER MEDINA, DAVID WILLIAMS, DOE OFFICERS, ROGELIO MEDINA)

101.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 100 of this Complaint with the same force and effect as if fully set forth herein.

102.   Defendants lacked reasonable suspicion to detain and probable cause to arrest DECEDENT.  DECEDENT was alone in her apartment unit, committing no crime, when Defendants escalated the situation.  Defendant BUNCH escalated the situation when he attempted to serve the eviction notice on DECEDENT, including by using unnecessary profanity, pointing his weapon at DECEDENT, intimidating DECEDENT, wrongfully accusing DECEDENT of having a gun when she clearly

1   did not, threatening her, and by failing to properly handle a situation involving a

2   person who is mentally ill or having a mental crisis.

3        103.   DECEDENT had a history of mental illness and was clearly in a state

4   of mental crisis during this incident.  DECEDENT doubted whether BUNCH was a

5   law enforcement officer, thinking that he might be an intruder, which would indicate

6   that she was experiencing a mental crisis.  As a trained police officer, BUNCH

7   should have recognized that DECEDENT was experiencing a mental health issue,

8   and he should have responded accordingly.  DECEDENT closed the door to her

9   apartment and remained inside the apartment.  At that time, DECEDENT posed no

10  threat to any person, and the defendant officers had no information that

11  DECEDENT had injured anyone or committed any crime.  Properly trained police

12  officers are taught recognize signs of mental illness and taught to de-escalate

13  situations involving a mentally ill individual or a person who is experiencing a

14  mental crisis.  BUNCH violated his training and basic police training when he

15  escalated the situation involving DECEDENT, particularly because DECEDENT

16  was obviously experiencing a mental crisis.

17       104.   The officers entered DECEDENT's unit under false pretenses, and

18  BUNCH, DOE DEPUTIES, and DOE OFFICERS integrally participated in the

19  detention and arrest by fabricating cause to enter DECEDENT's unit.

20       105.   Defendants NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE

21  DEPUTIES and DOE OFFICERS intentionally deprived DECEDENT of her

22  freedom of movement by use of force, threats of force, menace, fraud, deceit, and

23  unreasonable duress when they entered her condo unit without any information that

24  there was any crime in progress, when they trained their weapons on her and then

25  shot her multiple times with both lethal and less-than-lethal rounds, thereby seizing

26  her, and also when they handcuffed DECEDENT after their uses of force, without

27  probable cause.

28

106.   The conduct of BUNCH, NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE DEPUTIES and DOE OFFICERS was a substantial factor in causing the harm to DECEDENT.

107.   As a result of their misconduct, BUNCH, NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE DEPUTIES and DOE OFFICERS are liable for DECEDENT's injuries, either because they were integral participants in the false arrest/false imprisonment, or because they failed to intervene to prevent these violations.

108.   At all relevant times, BUNCH, NICKEL, J. MEDINA, WILLIAMS, and DOE DEPUTIES were working as sheriff's deputies for the County of San Diego Sheriff's Department and were acting within the course and scope of their duties as sheriff's deputies for the COUNTY.

109.   Defendant COUNTY is vicariously liable for the wrongful acts of BUNCH, NICKEL, J. MEDINA, WILLIAMS, and DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

110.   At all relevant times, R. MEDINA and DOE OFFICERS were working as police officers for the City of San Diego Police Department and were acting within the course and scope of their duties as police officers for the CITY.

111.   Defendant CITY is vicariously liable for the wrongful acts of R. MEDINA and DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

112.   The conduct of BUNCH, NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE DEPUTIES and DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of

1   DECEDENT, entitling Plaintiff to an award of exemplary and punitive damages as

2   to the individual defendants.

3       113.   Plaintiff brings this claim individually and as successor in interest to

4   DECEDENT, and seeks both survival damages and wrongful death damages under

5   this claim.

6

7                              **NINTH CLAIM FOR RELIEF**

8                        **Battery** (wrongful death and survival claim)

9       (Against Defendants CITY, COUNTY, DOE DEPUTIES, DANIEL NICKEL,

10   JAVIER MEDINA, DAVID WILLIAMS, DOE OFFICERS, ROGELIO MEDINA)

11      114.   Plaintiff repeats and re-alleges each and every allegation in

12   paragraphs 1 through 113 of his Complaint with the same force and effect as if fully

13   set forth herein.

14      115.   On March 3, 2022, at Acqua Vista Condominiums on West Beech

15   Street in San Diego, California, at approximately 12:40 p.m. on that date, BUNCH

16   attempted to serve an eviction notice on DECEDENT.  When DECEDENT

17   answered the door, she had a kitchen knife in her hand, and on information and

18   belief, DECEDENT had a kitchen knife in her hand because she was cooking.

19   DECEDENT did not threaten anyone with the knife and did not exit her apartment

20   at that time.  DECEDENT closed the door to her apartment and remained inside the

21   apartment.  At that time, DECEDENT posed no threat to any person.  BUNCH

22   escalated the situation involving DECEDENT, particularly because DECEDENT

23   was mentally ill and experiencing a mental crisis.

24      116.   NICKEL, J. MEDINA, WILLIAMS, R. MEDINA, DOE DEPUTIES

25   and DOE OFFICERS responded to DECEDENT's unit. When the officers

26   responded, DECEDENT was inside her unit, alone, and was not posing a threat to

27   any person.  At approximately 1:30 p.m., NICKEL, J. MEDINA, WILLIAMS, R.

28

1  MEDINA, DOE DEPUTIES and DOE OFFICERS opened the door to

2  DECEDENT's unit and entered the unit.  WILLIAMS deployed a beanbag shotgun

3  against DECEDENT, striking her, and the officers also inappropriately used a flash

4  bang against DECEDENT.  At the time of the beanbag deployment, DECEDENT

5  was inside her apartment and was not posing a threat to any person.  The use of the

6  beanbag shotgun against DECEDENT was an excessive and unreasonable use of

7  force and escalated the situation involving DECEDENT.

8      117.   The inappropriate beanbag deployment and/or flash bang deployment

9  caused DECEDENT to move toward the exit of her apartment, into the hallway

10  where Defendant deputies NICKEL, J. MEDINA, and WILLIAMS, along with

11  Defendant CITY officer R. MEDINA, fired lethal shots at DECEDENT, killing her.

12  The shooting was an excessive and unreasonable use of force, including because

13  DECEDENT was not armed with a gun and posed no immediate threat of death or

14  serious bodily injury to any person at the time of the shots.  Moreover, the deputies

15  and officers all failed to give a warning that they were prepared to use force against

16  her.  The shooting and other uses of force against DECEDENT were inappropriate

17  and violated the officers' and deputies' training and basic police training.

18      118.   As a direct and proximate result of the conduct of DOE DEPUTIES,

19  NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA as alleged

20  above, DECEDENT sustained injuries, died from her injuries and also lost her

21  earning capacity.  As a direct and proximate result of the conduct of DOE

22  DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R.

23  MEDINA as alleged above, DECEDENT suffered survival damages pursuant to

24  Code of Civil Procedure Section 377.34.

25      119.   At all relevant times, BUNCH, NICKEL, J. MEDINA, WILLIAMS,

26  and DOE DEPUTIES were working as sheriff's deputies for the County of San

27  Diego Sheriff's Department and were acting within the course and scope of their

28  duties as sheriff's deputies for the COUNTY.

120.   Defendant COUNTY is vicariously liable for the wrongful acts of NICKEL, J. MEDINA, WILLIAMS, BUNCH, and DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

121.   At all relevant times, R. MEDINA and DOE OFFICERS were working as police officers for the City of San Diego Police Department and were acting within the course and scope of their duties as police officers for the CITY.

122.   Defendant CITY is vicariously liable for the wrongful acts of R. MEDINA and DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

123.   The conduct of DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff and DECEDENT, entitling Plaintiff, individually and as the successor in interest to DECEDENT, to an award of exemplary and punitive damages as to Defendants DOE DEPUTIES, NICKEL, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA.

124.   Plaintiff brings this claim individually and as successor in interest to DECEDENT, and seeks both survival damages and wrongful death damages under this claim.

1

## **TENTH CLAIM FOR RELIEF**

2

### **Negligence** (wrongful death and survival claim)

3

(Against all Defendants)

4      125.   Plaintiff repeats and re-alleges each and every allegation in

5  paragraphs 1 through 124 of his Complaint with the same force and effect as if fully

6  set forth herein.

7      126.   Deputy sheriffs and police officers, including Defendants DOE

8  DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and

9  R. MEDINA, have a duty to use reasonable care to prevent harm or injury to others.

10 This duty includes only making lawful detentions and arrests, using appropriate

11 tactics, not entering a person's private residence under false pretenses,  giving

12 appropriate commands, giving warnings, and not using any force unless necessary,

13 using less than lethal options, and only using deadly force as a last resort.

14      127.   DECEDENT had a history of mental illness and was clearly in a state

15 of mental crisis during this incident.  As a trained police officers, the officer and

16 deputy defendants should have recognized that DECEDENT was experiencing a

17 mental health issue, and should have responded accordingly.  Properly trained police

18 officers are taught recognize signs of mental illness and taught to de-escalate

19 situations involving a mentally ill individual or a person who is experiencing a

20 mental crisis.  The officers violated their training and basic police training when

21 they escalated the situation involving DECEDENT, particularly because

22 DECEDENT was obviously experiencing a mental crisis.

23      128.   Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA,

24 WILLIAMS, DOE OFFICERS, and R. MEDINA breached this duty of care.  The

25 actions and inactions of Defendants DOE DEPUTIES, NICKEL, BUNCH, J.

26 MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA were negligent and

27 reckless, including but not limited to:

28

1

(a)   the failure to properly and adequately assess the need to enter

2                      DECEDENT's condo unit when there was no crime in progress,

3                      when defendants did not observe DECEDENT commit any

4                      crime, and when DECEDENT was alone in her unit and posing

5                      no threat to herself or any other person;

6        (b)   the failure to properly and adequately assess the need to use

7                      force (including the beanbag deployment and deadly force)

8                      against DECEDENT;

9        (c)   the negligent tactics and handling of the situation with

10                    DECEDENT, including pre-shooting negligence and the failure

11                   to properly handle a situation with a mentally ill individual or a

12                   person who is undergoing a mental crisis;

13        (d)   the negligent entry into DECEDENT's unit, negligent detention,

14                  negligent arrest, negligent failure to give a warning prior to using

15                  force, and the negligent use of force, including deadly force,

16                  against DECEDENT;

17        (e)   the failure to provide prompt medical care to DECEDENT after

18                  the shooting;

19        (f)   the failure to properly train and supervise employees, both

20                  professional and non-professional, including DOE DEPUTIES,

21                  NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE

22                  OFFICERS, and R. MEDINA; and

23        (g)   the negligent communication of information during the incident.

24     129.   As a direct and proximate result of Defendants' conduct as alleged

25  above, and other undiscovered negligent conduct, DECEDENT was caused to suffer

26  severe pain and suffering and ultimately died.  Also as a direct and proximate result

27  of Defendants' conduct as alleged above, Plaintiff has suffered emotional distress

28

1   and mental anguish.  Plaintiff also has been deprived of the life-long love,
2   companionship, comfort, support, society, care and sustenance of DECEDENT, and
3   will continue to be so deprived for the remainder of his natural life.

4   130.   At all relevant times, BUNCH, NICKEL, J. MEDINA, WILLIAMS,
5   and DOE DEPUTIES were working as sheriff's deputies for the County of San
6   Diego Sheriff's Department and were acting within the course and scope of their
7   duties as sheriff's deputies for the COUNTY.

8   131.   Defendant COUNTY is vicariously liable for the wrongful acts of
9   NICKEL, J. MEDINA, WILLIAMS, BUNCH, and DOE DEPUTIES pursuant to
10  section 815.2(a) of the California Government Code, which provides that a public
11  entity is liable for the injuries caused by its employees within the scope of the
12  employment if the employee's act would subject him or her to liability.

13  132.   At all relevant times, R. MEDINA and DOE OFFICERS were working
14  as police officers for the City of San Diego Police Department and were acting
15  within the course and scope of their duties as police officers for the CITY.

16  133.   Defendant CITY is vicariously liable for the wrongful acts of R.
17  MEDINA and DOE OFFICERS pursuant to section 815.2(a) of the California
18  Government Code, which provides that a public entity is liable for the injuries
19  caused by its employees within the scope of the employment if the employee's act
20  would subject him or her to liability.

21  134.   Plaintiff brings this claim individually and as successor in interest to
22  DECEDENT, and seeks both wrongful death and survival damages under this claim.

23
24  //
25
26  //
27
28

-33-
COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ELEVENTH CLAIM FOR RELIEF</u>**

**(Violation of Cal. Civil Code § 52.1)**

(Against all Defendants)

135.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 134 of his Complaint with the same force and effect as if fully set forth herein.

136.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights, which can be shown by a reckless disregard for that person's civil rights.  DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA intended to interfere with DECEDENT's constitutional rights, did successfully interfere with DECEDENT's constitutional rights, and also acted with reckless disregard for DECEDENT's constitutional rights.

137.   Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA intentionally committed and attempted to commit acts of violence against DECEDENT.  BUNCH violently coerced and threatened DECEDENT when he attempted to serve the eviction notice on DECEDENT, wherein he swore at DECEDENT, pointed his weapon at DECEDENT, wrongfully accused DECEDENT of having a gun when she clearly did not, caused her to doubt whether he was law enforcement, and continued to escalate the situation even though it was apparent that DECEDENT was having a mental crisis.  BUNCH, NICKEL, J. MEDINA, WILLIAMS, and R. MEDINA intentionally committed and attempted to commit acts of violence against DECEDENT, shot her without warning, justification or excuse with the beanbag gun and with lethal firearms, when they handcuffed her, when they denied her necessary medical care, and when they all integrally participated and failed to

1  intervene in the above violence.  These actions by the individual defendants
2  interfered with DECEDENT's civil rights to be free from unreasonable searches and
3  seizures, free from excessive force, the right to due process, to equal protection of
4  the laws, to medical care, to be free from state actions that shock the conscience, and
5  to life, liberty, and property.

6      138.   On information and belief, Defendants intentionally committed the
7  above acts to discourage DECEDENT from exercising her civil rights, to retaliate
8  against her for invoking such rights, or to prevent her from exercising such rights,
9  which she was fully entitled to enjoy.  DECEDENT was alone in her own home at
10  the time of this incident, and she was not posing a threat to herself or anyone else.
11  DECEDENT had the right to be on her own property with a kitchen knife.

12      139.   On information and belief, DECEDENT reasonably believed and
13  understood that the violent acts committed by Defendants DOE DEPUTIES,
14  NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA
15  were intended to discourage her from exercising her constitutional rights, to retaliate
16  against him for invoking such rights, or to prevent her from exercising such rights.

17      140.   The conduct of Defendants DOE DEPUTIES, NICKEL, BUNCH, J.
18  MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA was a substantial factor
19  in causing DECEDENT's and Plaintiff's and DECEDENT's harms, losses, injuries,
20  and damages.

21      141.   At all relevant times, BUNCH, NICKEL, J. MEDINA, WILLIAMS,
22  and DOE DEPUTIES were working as sheriff's deputies for the County of San
23  Diego Sheriff's Department and were acting within the course and scope of their
24  duties as sheriff's deputies for the COUNTY.

25      142.   Defendant COUNTY is vicariously liable for the wrongful acts of
26  NICKEL, J. MEDINA, WILLIAMS, BUNCH, and DOE DEPUTIES pursuant to
27  section 815.2(a) of the California Government Code, which provides that a public

28

entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

143. At all relevant times, R. MEDINA and DOE OFFICERS were working as police officers for the City of San Diego Police Department and were acting within the course and scope of their duties as police officers for the CITY.

144. Defendant CITY is vicariously liable for the wrongful acts of R. MEDINA and DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

145. Defendants DOES 4-5 and 9-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

146. The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiff's rights, justifying an award of exemplary and punitive damages as to Defendants DOE DEPUTIES, NICKEL, BUNCH, J. MEDINA, WILLIAMS, DOE OFFICERS, and R. MEDINA.

147. Plaintiff brings this claim individually and as successor in interest to DECEDENT, and seeks wrongful death and survival damages under this claim. Plaintiff also seeks attorney's fees and costs under this claim pursuant to Cal. Civ. Code §52.1.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants COUNTY OF SAN DIEGO; DANIEL NICKEL; JASON BUNCH, JAVIER MEDINA; DAVID WILLIAMS; CITY OF SAN DIEGO; ROGELIO MEDINA and DOES 1-10, as follows:

A.  For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.  For funeral and burial expenses, and loss of financial support;

C.  For punitive damages against the individual defendants in an amount to be proven at trial;

D.  For interest;

E.  For reasonable attorneys' fees, including litigation expenses;

F.  For costs of suit; and

G.  For such further other relief as the Court may deem just, proper, and appropriate.

DATED: March 13, 2023            LAW OFFICES OF DALE K. GALIPO

/s/  *Dale K. Galipo*

Dale K. Galipo
*Attorneys for Plaintiff*

DATED: March 13, 2023            LAW OFFICES OF DAVID A. KAUFMAN

/s/  *David A. Kaufman*

David A. Kaufman
*Attorneys for Plaintiff*

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff hereby demands a trial by jury.

3

4   DATED: March 13, 2023            LAW OFFICES OF DALE K. GALIPO

5                                    /s/  *Dale K. Galipo*

6                                    Dale K. Galipo

7                                    *Attorneys for Plaintiff*

8

9

10

11  DATED: March 13, 2023            LAW OFFICES OF DAVID A. KAUFMAN

12

13                                   /s/  *David A. Kaufman*

14                                   David A. Kaufman

15                                   *Attorneys for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES